IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GEORGE M. AVILA,

    Plaintiff,

  v.

WELLS FARGO BANK, NATIONAL ASSOCIATION; NORTHWEST TRUSTEE SERVICES, INC.; MORTGAGE ELECTRONIC REGISTRATIONS, INC.; HSBC BANK USA, NATIONAL ASSOCIATION as Trustee for the GSAA Home Equity Trust 2005-6 Asset-Backed Certificates, Series 2005-6;

    Defendants.

No. C 16-05904 WHA

**ORDER GRANTING MOTION TO DISMISS**

## INTRODUCTION

In this foreclosure action, defendants move to dismiss the complaint for failure to state a claim. For the reasons stated below, the motion is **GRANTED**.

## STATEMENT

In 2005, plaintiff George M. Avila obtained a mortgage loan from third-party MIT Lending, a division of MortgageIt, Inc., secured by a deed of trust in real property in Fremont, California, where he resides and cares for an adult male with down syndrome and severe autism (Compl. ¶ 1). The deed of trust identified third-party MIT Lending as the lender, third-party First American Title as the trustee, and defendant Mortgage Electronic Registration Systems,

Inc. ("MERS") as the beneficiary "solely as a nominee for [MIT Lending] and [MIT Lending's] successors and assigns" (Compl. ¶ 7, Exh. A at 2). The deed of trust further stated (*id.* at 3):

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of the Lender including, but not limited to, releasing and cancelling this Security Instrument.

MIT Lending was the original servicer on Avila's loan (*id.* ¶ 8).

In May 2005, MIT Lending sold Avila's loan for full loan value to third-party Goldman Sachs Mortgage Company, which securitized the loan as part of a securitized trust, the GSAA Home Equity Trust 2005-6 Asset-Backed Certificates, Series 2005-6, which was organized under New York law (*id.* ¶¶ 9–10, 13). Defendant HSBC Bank USA, National Association became the trustee of that securitized trust (*id.* ¶¶ 5, 12). Defendant Wells Fargo Bank, National Association, via its servicing division, America's Servicing Company ("ASC"), became the servicer of the securitized trust that included Avila's loan (*id.* ¶ 31).

In January 2014, MERS assigned its rights and interests under the deed of trust to HSBC as trustee for the securitized trust. That assignment was recorded in February 2014 (*id.* ¶ 23, Exh. D). In October 2015, defendant Wells Fargo Bank, National Association, acting as attorney-in-fact for HSBC (in turn acting as trustee of the securitized trust), executed and recorded a substitution of trustee on the deed of trust securing Avila's loan, substituting defendant Northwest Trustee Services, Inc., as trustee under the deed of trust in place of First American Title (*id.* ¶ 31, Exh. E). The same day the substitution was recorded, Northwest recorded a notice of default and election to sell under the deed of trust, stating that Avila was nearly twenty thousand dollars in default (*id.* ¶ 32, Exh. F). In February 2016, Northwest recorded a notice of trustee's sale setting an auction date later that month (*id.* ¶ 42, Exh. O).

Avila engaged in extended correspondence with representatives from ASC (the purported servicer of Avila's loan) and Northwest (the purported trustee) concerning the pending trustee sale and a possible loan modification, but the negotiations were unsuccessful as of March 2016 (*id.* ¶¶ 33–41, 43–56).

2

In March 2016, Avila filed a wrongful foreclosure action in Alameda County Superior Court against the same defendants herein. In September 2016, Judge Dennis Hayashi of the Alameda County Superior Court sustained defendants' demurrer to the complaint, giving Avila leave to amend all claims except for his claims for declaratory relief. Instead of amending, Avila elected to dismiss his state court action without prejudice (Defs.' RJN, Exhs. A–C).

Avila then filed this action in federal court in San Francisco in October 2016. The complaint herein copies the complaint filed in state court, nearly verbatim. The only differences are the omission of his claims for declaratory relief and an update to the scheduled date of the auction sale (which had been postponed in the intervening months). Avila asserts claims for (1) wrongful foreclosure, (2) quiet title, (3) violation of the California Unfair Competition Law, (4) unjust enrichment, and (5) violation of certain notice requirements under the Homeowner Bill of Rights.

Wells Fargo, HSBC, and MERS jointly moved to dismiss (Dkt. No. 10). Northwest joined their motion (Dkt. No. 13).

Although not alleged in the complaint, Avila states in his brief on the instant motion that ASC transferred service of his loan to Specialized Loan Servicing ("SLS") at some unspecified time, presumably after he filed the instant action. He avers that he reinstated his loan and that SLS has completed its review of his loan modification (though the record is silent on the results of that review) (Pl.'s Opp. at 4–5). On October 20, Northwest recorded a rescission of the notice of default and election to sell under the deed of trust (Defs.' Supp. RJN, Exh. 1). At oral argument, counsel for Avila acknowledged that the notice of default in question had been rescinded and the outstanding debt had been paid off but that Avila had already missed three months of payments under the reinstated loan, totaling approximately six thousand dollars.

This order follows full briefing and oral argument.

**ANALYSIS**

This order acknowledges that the instant complaint seems anchored in a stale and superseded set of facts. Nevertheless, it rules on the merits. Avila, who is represented by counsel, contends that MERS had no rights or interests to assign to HSBC in early 2014.

3

1  Accordingly, he claims, our defendants lacked authority to commence non-judicial foreclosure
2  proceedings. This order first addresses Avila's over-arching theories of the case. It then turns
3  to each individual claim.

### 1. AVILA'S THEORIES OF THE CASE.

The deed of trust that Avila executed in 2005 named MIT Lending as the lender, First American Title as the trustee, and MERS "solely as a nominee for [MIT Lending] and [MIT Lending's] successors and assigns" (Compl., Exh. A). Nevertheless, Avila contends that when MIT Lending sold the loan to Goldman Sachs Mortgage Company in 2005, that sale "extinguished all right to, and interest in, his mortgage previously held by MERS" (as well as by MIT Lending) (Pl.'s Opp. at 5). Defendants respond that the deed of trust named MERS as the nominal beneficiary not only for MIT Lending, but also for its "successors and assigns." That is, defendants contend MERS remained the nominal beneficiary even after MIT Lending sold the loan to Goldman Sachs Mortgage Company (which in turn sold it to the securitized trust). According to defendants, MERS' interest in the loan survived until MERS conveyed that interest to HSBC in 2014. Until that point, they contend, MERS retained the authority to "exercise any or all of [the interests granted in the deed of trust], including, but not limited to, the right to foreclose and sell the Property" (Compl., Exh. A at 3).

Avila concedes that MERS initially had the authority as the nominal beneficiary to assign the rights secured by the deed of trust (Pl.'s Opp. at 6). He offers no authority for setting aside the plain language of the deed of trust, which granted MERS authority as nominee for MIT Lending *and* its successors and assigns. Nor is there any ambiguity in that language. Avila simply responds that MERS lacked authority to foreclose on the property because it lacked an agency relationship with MIT Lending's assignees, for whom MERS purported to act as the nominee following such assignments.

The California Court of Appeal addressed this question directly in *Herrera v. Federal National Mortgage Association*, 205 Cal. App. 4th 1495, 1506 (2012) (disapproved on other grounds in *Yvanova v. New Century Mortgage Corp.*, 62 Cal. 4th 919, 924 (2016)). There, MERS had been granted authority as the nominee in a deed of trust with identical language to

4

the deed of trust herein. Nevertheless, the plaintiff contended that MERS lacked authority to make a valid assignment of the note or deed of trust on behalf of the original lender, because MERS had no agency agreement with the successors and assigns of the original lender. Absent an allegation that MERS in fact *lacked* that authority, *Herrera* held that MERS retained the right to exercise all rights of the lender, based on the grant of that authority in the deed of trust. So too here.

Avila separately argues that MERS' authority as nominee was vitiated because Goldman Sachs Mortgage Company, the initial assignee of MIT Lending, was not a member of the MERS registry of mortgage servicing rights and beneficial interest holders. Avila's complaint neither explains the consequence of an assignment outside of the MERS system or why that assignment would preempt MERS' authority granted by the deed of trust.

More importantly, however, Avila cites a website, http://www.mersinc.org/about-us/member-search, as support for the allegation that Goldman Sachs Mortgage Company is not a member of MERS (Compl. ¶ 15). But a review of the cited website reveals that Goldman Sachs Mortgage Company *is* listed as a member. This order need not accept as true Avila's allegation, which is contradicted by the judicially noticeable facts on the very source he cites. In any case, *Herrera* did not specify that MERS' authority persisted only following assignments to its memberships. Rather, it applied to the extent described in the applicable deed of trust. This order rejects Avila's argument that MERS' authority evaporated once MIT Lending assigned the loan to Goldman Sachs Mortgage Company.

Avila cites three decisions purportedly in support of his theory, but none is on point. He cites *Lundy v. Selene Finance, L.P.*, No. 13-5676, 2016 WL 1059423 (N.D. Cal. Mar. 17, 2016) (Judge Jon S. Tigar), for the proposition that an entity alienates all interest in a loan upon selling the loan to a participant in a securitization transaction. But *Lundy* does not support that proposition. Rather, in *Lundy*, the defendants laid out a series of transactions subsequent to securitization of a mortgage loan but failed to refute the allegation that the original lender had assigned the deed of trust to a different party *before* assigning it to the securitized trust. That is not our case.

Avila's citation to *Sciarratta v. U.S. Bank National Assn.*, 247 Cal. App. 4th 552, 563-564 (2016), fails for the same reason.

Finally, Avila cites a state trial court's decision in *Inoue v. Bank of America, N.A.*, No. CGC-14-539132 (Sup. Ct. Cal. Sept. 13, 2016), which held, without analysis or discussion, that the complaint therein "sufficiently alleges that this assignment is void as the Notice and Deed of Trust have been sold to a non-MERS member" (Pl.'s Opp. Exh. C).  Nothing in that decision indicated the basis for departing from *Herrera* and related decisions, or what unique allegations might have demonstrated that MERS lacked authority as a nominee.  Accordingly, *Inoue* is unpersuasive.

Avila next contends that the MERS' 2014 assignment to HSBC is void under New York trust law (which applied to the securitized trust), inasmuch as MERS assigned the loan to HSBC after the closing date of the trust.  Under Section 7-2.4 of the New York Estates, Powers & Trust law, "every sale, conveyance or other act of the trustee in contravention of the trust . . . is void."   Defendants contend that Section 7-2.4 should not be read literally and should render such transactions merely voidable.  This distinction is critical, inasmuch as a plaintiff lacks standing to challenge an assignment that is merely voidable, if the plaintiff was not a party to the agreement.  *Yvanova*, 62 Cal. 4th at 936.

In *Glaski v. Bank of America, N.A.*, 218 Cal. App. 4th 1079 (2013), the California Court of Appeal interpreted that provision literally (voiding the transaction, rather than finding it voidable), relying on a decision by a trial court in New York, and held that a lender's purported transfer of the plaintiff's deed of trust to a securitized trust was void.  Thus, the trustee of the securitized trust lacked the deed of trust and could not properly foreclose on his property.

Avila states in his brief that MERS's transfer of the deed of trust to HSBC in 2014 occurred after the closing date of the securitized trust for which HSBC acted as the trustee (Pl.'s Opp. at 13). Under *Glaski*, he contends, that transfer was void.  Although this theory did not appear in his complaint, leave to amend to include the theory in greater detail will not be granted, because this order joins the overwhelming trend of decisions rejecting *Glaski*, as now discussed.

6

1    *Glaski* itself acknowledges competing trends in interpreting Section 7-2.4.  Indeed, in
2    *Saterbak v. JPMorgan Chase Bank, N.A.*, 245 Cal. App. 4th 808, 816 n.5 (2016), the California
3    Court of Appeal reversed course and rejected *Glaski*, noting that the trial court decision it relied
4    on had been overturned.  Similarly, the Court of Appeals for the Second Circuit held that a post-
5    closing date transfer is not void under Section 7-2.4 but only voidable.  *Rajamin v. Deutsche*
6    *Bank Nat'l Trust Co.*, 757 F.3d 79, 88–90 (2d Cir. 2014).  Of course, we are not bound by
7    California courts' or the Second Circuit's interpretations of New York law, but our court of
8    appeals has also rejected *Glaski*, albeit in unpublished decisions.  *See Zeppeiro v. GMAC*
9    *Mortg., LLC*, No. 13-55420, __ Fed. Appx. __, 2016 WL 5800472, at *1 (9th Cir. Oct. 5, 2016);
10   *Christie v. Bank of New York Mellon, N.A.*, 617 Fed. Appx. 680, 682 (9th Cir. 2015); *Hunt v.*
11   *U.S. Bank N.A.*, 593 Fed. Appx. 730, 731 (9th Cir. 2015); *In re Davies*, 565 Fed. Appx. 630,
12   633 (9th Cir. 2014).  This order follows the prevailing trend and rejects *Glaski* as a
13   misstatement of New York law.  Thus, Avila cannot allege facts that would make the 2014
14   assignment of his deed of trust void, rather than voidable.[1]

15   Avila contends that "the issue as to whether the assignment is void or merely voidable is
16   an issue in dispute in this case and its resolution is not proper at the Rule 12(b)(6) stage of the
17   proceedings" (Pl.'s Opp. at 9).  But, for the reasons stated above, this is a purely legal question.
18   Accepting the plausible allegations in Avila's complaint as true, any irregularity in the
19   underlying transactions would render those transactions merely *voidable*, not *void*.  Avila's
20   objection to the law cannot defeat defendants' motion to dismiss.[2]

21   This order now turns to Avila's specific claims.

---

[1]  This order need not reach the question of whether the California Supreme Court's decision in *Yvanova*, which held that a debtor/trustor could challenge a transaction as void, conferred standing pre-foreclosure.

[2]  To the extent Avila's complaint mischaracterizes or contradicts the contents of documents that are appended to his complaint and that are the subject of defendants' requests for judicial notice, such allegations are simply implausible and need not be accepted as true.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.")

7

### 2. AVILA'S SPECIFIC CLAIMS.

#### A. Wrongful Foreclosure.

The basic elements of a tort cause of action for wrongful foreclosure are: "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." *Miles v. Deutsche Bank Natl. Trust Co.*, 236 Cal. App. 4th 394, 408 (2015). Here, Avila fails on all three elements.

*First*, no foreclosure has yet occurred (indeed, the notice of default has been rescinded), and, as discussed above, Avila failed to allege any "illegal, fraudulent, or willfully oppressive" conduct that led to the prior notices of trustee sale. *Second*, Avila cannot contend he was prejudiced or harmed, since *no foreclosure has occurred*. *Finally*, Avila has not alleged that he has tendered any amount of his default or that tender was excused. (It appears from Avila's brief, but not from the complaint, that he has reinstated the loan, so he may no longer be in default.) Since Avila has failed to allege facts to support any of the three elements for a claim of wrongful foreclosure, this claim must be **DISMISSED**.

#### B. Quiet Title.

The purpose of a quiet title action is to establish one's title against adverse claims to real property or any interest therein. Cal. Code Civ. Proc. § 760.020. "[A] mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee." *Miller v. Provost*, 26 Cal. App. 4th 1703, 1707 (1994). Avila's quiet title claim fails both because he cannot establish superior title in his property and because he has not alleged that he has paid his debt. This claim is, therefore, **DISMISSED**.

#### C. Homeowners Bill of Rights.

Section 2923.55(a) and (b)(1) of the California Civil Code, which are part of the Homeowners Bill of Rights, require a mortgage servicer to provide a borrower, upon request, "[a] copy of any assignment, if applicable, of the borrower's mortgage or deed of trust required

8

to demonstrate the right of the mortgage servicer to foreclose," before recording a notice of default. Avila alleges he asked HSBC for "any and all assignments of any interests in his mortgage loan" (Compl. ¶ 97). He contends HSBC failed to provide him with copies of assignments that occurred during the securitization process, notably the assignment between Goldman Sachs Mortgage Company and the securitized trust.

Avila concedes that he was provided with a copy of the deed of trust, the note, and the corporate assignment of the deed of trust from MERS to HSBC (*ibid.*). As discussed above, MERS, as the nominee, had the authority to assign the beneficial interest in the deed of trust from MIT Lending's successors and assigns to HSBC, and it did so. Thus, that assignment was the only assignment "required to demonstrate the right of [HSBC] to foreclose," notwithstanding any prior "intervening assignments." Thus, to the extent any documents reflecting assignments of the deed of trust prior to the assignment to HSBC exist, Section 2923.55 did not require HSBC to provide them. This claim must also be **DISMISSED**.

### D. California's Unfair Competition Law.

Section 17200 of the California Business and Professionals Code bans "unlawful, unfair or fraudulent business act[s] or practice[s]." Avila claims that defendants unlawfully, unfairly, and fraudulently held themselves out as the proper parties to foreclose on his property. As stated above, Avila's theories of defendants' impropriety fail. Accordingly, he cannot state a claim under any prong. That claim must be **DISMISSED**.

### E. Unjust Enrichment.

Unjust enrichment is not a cause of action or even a remedy "but rather a general principle, underlying various legal doctrines and remedies. It is synonymous with restitution." *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004). At the remedy stage, restitution could be a possible form of relief. Inasmuch as this order dismissed Avila's other claims, however, his "claim" for unjust enrichment must also be **DISMISSED**.

**CONCLUSION**

For the reasons stated above, defendants' motion to dismiss is **GRANTED**. Inasmuch as Avila's claims rest on theories that fail as a matter of law, amendment would be futile. Judgment will follow.

Defendants seek judicial notice of several filings in Avila's state court action as well as public records of the transactions at issue herein (most of which were also appended to Avila's complaint). Avila responds that he "does not object to judicial notice" of the proffered documents, but opposes the "judicial notice of any purported adjudicative facts" therein. This order **GRANTS** defendants' requests for judicial notice of the contents of the documents and the fact that they were recorded but does *not* take judicial notice of the underlying validity of the transactions reflected therein.

**IT IS SO ORDERED.**

Dated:   December 23, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE